THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NOR-
VAL W. WELLS, JR., Defendant-Appellee.

Fifth District    No. 5—96—0076

Opinion filed April 26, 1996.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten,
Stephen E. Norris, and Gerry R. Arnold, all of State's Attorney's Appellate
Prosecutor's Office, of counsel), for the People.

John J. Rekowski, Public Defender, of Edwardsville (Daniel M. Kirwan
and Dan W. Evers, both of State Appellate Defender's Office, of counsel), for
appellee.

JUSTICE KUEHN delivered the opinion of the court:

On April 20, 1996, Norval Wells, Jr., awoke in a jail cell. His day,
like every day since July of 1992, was the same. He saw the same
walls, breathed the same silent air, and retired to the same cot in a
small corner of the world where the State of Illinois has kept him for
over 1,300 days. April 20, 1996, was different for Mr. Wells, although
he did not notice the difference. It was the day we advised that, absent
some showing of compelling reasons, he could no longer be legally
held prisoner. He is still in jail.

We are again presented with a cry for freedom. It is a disturbing
cry for it sounds today more like a cry for justice. We believed, when
we earlier addressed the further pretrial imprisonment of Mr. Wells,
that we might be called upon to revisit the issue. See *People v. Wells*,

279 Ill. App. 3d 564 (1996). We could not, however, have anticipated what we are now presented.

The release of a man charged with murder, even when the law clearly mandates it, is not an easy task. It is a most serious decision, never taken lightly. A criminal charge carries the imprimatur of decent and dedicated officials working to bring criminals to justice.

We were reluctant in our initial review of this issue to order the immediate release of defendant, despite a record that supported his request for release. An absence of reasons to compel his further pretrial detention pending this appeal entitled him to release. 145 Ill. 2d R. 604(a)(3); *Wells*, 279 Ill. App. 3d 564.

Because the State asserted that its ability to prove the defendant's guilt was irrelevant to a request for prolonged imprisonment pending appeal; because the trial court agreed and announced that it would not consider the weight of the evidence upon which the charge was predicated; because no thought was given to the possibility that indeterminate pretrial imprisonment might rest upon a charge incapable of producing conviction; we remanded to allow the State to cure what seemed an oversight in its interpretation of the rule. We extended the State seven days to present some evidence to establish that the charge was not baseless and that continued confinement was justifiable. The State was given an opportunity to present reasons that *compelled* Mr. Wells' further confinement pending its appeal.

The State did not attempt to show that reasons compelled further confinement. It allowed the basis of its charge to remain obscure. The means by which it plans to convert accusation into guilt remains a secret of the State. Its enigmatic silence on the subject endures.

The State allowed seven days to pass without addressing any of our concerns. No hearing was called and no effort was made to cure the deficient record. It remains devoid of any evidence to support the legitimacy of the charge. Nothing was presented, not one shred of evidence, to allow us to measure the likelihood of conviction at the end of defendant's years of pretrial imprisonment.

We have already expressed our concern that the State appears to confuse its power to accuse with a power to punish. *Wells*, 279 Ill. App. 3d at 567. Norval Wells, Jr., stands convicted of nothing despite his pretrial detention for almost four years. The State, obviously intent on maintaining its hold, asks us to sanction additional lengthy pretrial imprisonment on faith that its power to accuse is enough. We decline the invitation to walk through the looking glass.

" 'The Queen observes that the King's Messenger is "in prison now, being punished; and the trial doesn't even begin till next

Wednesday; and of course the crime comes last of all." Perplexed, Alice asks, "Suppose he never commits the crime?" That would be all the better, wouldn't it?, the Queen replies.' " Note, *United States v. Salerno: Pretrial Detention Seen Through the Looking Glass*, 66 N.C.L. Rev. 616 (1988), quoting L. Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell*, 56 Va. L. Rev. 371, 374-75 (1970), quoting L. Carroll, Through the Looking-Glass and What Alice Found There 88 (1902).

The right to speedy trial is fundamental with its English roots in the 1166 Assize of Clarendon and the 1215 Magna Carta. *Klopfer v. North Carolina*, 386 U.S. 213, 223-24, 18 L. Ed. 2d 1, 8, 87 S. Ct. 988, 993-94 (1967). By the late thirteenth century, justices were visiting the countryside three times each year—approximately every 120 days—in an effort to bring each prisoner speedy justice. *Klopfer*, 386 U.S. at 223-24, 18 L. Ed. 2d at 8, 87 S. Ct. at 993-94, quoting E. Coke, The Second Part of the Institutes of the Laws of England 43 (5th ed. 1797).

The rights expressed in Supreme Court Rule 604(a)(3) protect against potential abuse of the power to accuse and detain, when the statutes designed to guard against delays in trial do not restrain that power. 145 Ill. 2d R. 604(a)(3). Normally, a pretrial prisoner cannot languish in prison awaiting trial for more than 120 days unless he causes a delay. 725 ILCS 5/103—5(a) (West 1994). However, when the State occasions delay in trial by pursuing an interlocutory appeal, speedy trial rights are suspended. Hence, a pretrial prisoner is granted the right to release when the State appeals unless the State can show compelling reasons to override such right and continue pretrial detention. See *Wells*, 279 Ill. App. 3d at 567.

The interplay between the right to speedy trial, and defendant's right to release because of a lengthy delay occasioned by a State appeal, was addressed in detail in our earlier *Wells* decision. We do not find it particularly abstruse. Our earlier opinion found *nothing* in the record *to compel further pretrial imprisonment* of Mr. Wells. *Wells*, 279 Ill. App. 3d at 566. We allowed the State a week to supplement the record. We provided the State another opportunity "to show compelling reasons to continue pretrial detention and override defendant's *right to release* under Supreme Court Rule 604(a)(3)." (Emphasis added.) *Wells*, 279 Ill. App. 3d at 570. The State did nothing to alter the record from which these findings flowed. There is additional matter of record—something we did not know two weeks ago. We will address it momentarily.

Norval Wells, Jr., imprisoned without a trial for almost four years, is still confined in the Madison County jail. The State, despite

the express language of Supreme Court Rule 604(a)(3) and our application of it to the facts of this case, has taken no action to secure his release.

Supreme Court Rule 604(a)(3) says that Norval Wells, Jr., shall not be held in jail or to bail. 145 Ill. 2d R. 604(a)(3). The State has presented nothing to compel further pretrial imprisonment and, therefore, the law requires immediate and unconditional release. Since we can no longer assume that the State's Attorney will comply with the law, we order him to comply. The State's Attorney of Madison County is hereby ordered to carry out his duty to the People of the State of Illinois. He must enforce the laws of this State—even those laws that protect people from use of the power entrusted to him. We order him to secure the release of defendant, Norval Wells, Jr., during the pendency of this appeal.

The State is seeking a supervisory order from our supreme court. It asked the supreme court for an emergency stay from our decision which was denied. *Acta non verba.* The State's acts clearly indicate an understanding of its duty under our earlier decision.

In its appeal to the supreme court, the State represents that release of Norval Wells, Jr., presents a danger to the physical safety of others. Apparently, he is a danger only so long as he persists in his innocence and refuses to sanctify the State's charge by pleading guilty.

For some time, the State has expressed a willingness to let Mr. Wells out of jail. All the State wants in return for Mr. Wells' freedom is his admission of guilt.

At the same time it invokes fear of defendant's release before the supreme court, the State dangles the keys to the Madison County jail before the defendant and offers them in exchange for his innocence. At least so far, Mr. Wells values his innocence more than he values his freedom.

George Orwell wrote of a police state brought to perfection, where power is the only thing that counts, where official language, "Newspeak," progressively narrows the range of thought, and where "Doublethink" becomes a necessary habit of mind. The State dominates society by slogans—"War is Peace," "Freedom is Slavery," and "Ignorance is Strength." G. Orwell, 1984 (1949).

There is something decidedly Orwellian about a prosecution in which admitted guilt can bring freedom but protestation of innocence incurs punishment. There is something decidedly wrong when pretrial detention is advanced as a matter of public safety while guilt remains in question but reunion with society is acceptable if innocence is surrendered.

Norval Wells, Jr., has been a pretrial prisoner in the Madison County jail for a period of time that exceeds our engagement and defeat of the Axis forces in World War II. His life has been lost in a long yesterday, awaiting a trial that he believes will free him with his dignity intact.

Tomorrow, the supreme court might grant the State's request and order him held longer. For today, the law bestows the same freedom we all share and take for granted. He can breathe fresh air, feel the sun and the wind in his face, and go anywhere he wants. For today, at least, he is free.

The State is ordered to secure his release from the Madison County jail and restore him to freedom during the time it takes for the State to process its appeal.

Defendant ordered released.

MAAG and CHAPMAN, JJ., concur.